**UNITED STATES of America,**
**Appellee,**

v.

**Jermi Francisco LOPEZ, Defendant–**
**Appellant.**

**Docket No. 03–1476–CR.**

United States Court of Appeals,
Second Circuit.

Argued: March 15, 2004.

Decided: April 4, 2006.

---

Matthew L. Guadagno, Bretz & Coven, LLP, (Kerry William Bretz and Jules E. Coven, on the brief), New York, New York, for Defendant–Appellant.

Colleen Kavanaugh, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney for the Eastern District of New York, Barbara D. Underwood and Emily Berger, Assistant United States Attorneys, of counsel), Brooklyn, New York, for Appellee.

Before: SACK, SOTOMAYOR and RAGGI, Circuit Judges.

Judge RAGGI dissents in part in a separate opinion.

SOTOMAYOR, Circuit Judge.

Defendant Jermi Francisco Lopez appeals from an August 5, 2003 judgment of the United States District Court for the Eastern District of New York (Johnson, J.) convicting him, upon his conditional plea of guilty, of illegally reentering the United States in violation of 8 U.S.C. § 1326(a) and (b)(2). We hold that erroneous statements by the Immigration Judge ("IJ") and the Board of Immigration Appeals ("BIA") informing Lopez that he was categorically ineligible for relief under former § 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c), deprived Lopez of judicial review within

the meaning of 8 U.S.C. § 1326(d)(2). We vacate Lopez's conviction and remand to the district court for determination of whether the erroneous information given by the government to Lopez on the availability of § 212(c) relief rendered Lopez's deportation order fundamentally unfair within the meaning of § 1326(d)(3).

## BACKGROUND

Lopez, a citizen of the Dominican Republic, first entered the United States in January 1986 at the age of nine as a lawful permanent resident. On October 6, 1994, Lopez was convicted in New York State Supreme Court of attempted robbery in the second degree. Upon entering a plea of guilty, he was sentenced to a term of two to six years' imprisonment. On November 14, 1996, the Immigration and Naturalization Service ("INS")[1] issued Lopez an Order to Show Cause, charging him with deportability under INA § 241(a)(2)(A)(iii), 8 U.S.C. § 1251(a)(A)(iii).

Much of the subsequent history of this case hinges on significant revisions to the immigration laws that occurred during this time period. Prior to 1996, former § 212(c) of the INA vested the Attorney General with "broad discretion to cancel deportation orders for aliens who met certain residence requirements and had not served five years in prison for an aggravated felony." *United States v. Copeland*, 376 F.3d 61, 64 (2d Cir.2004) (citing 8 U.S.C. § 1182(c) (repealed 1996)). The en-actment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009–546 (1996), extinguished the prospect of such relief for many categories of aliens. Section 440(d) of AEDPA eliminated § 212(c) waivers of deportation for those aliens deportable for having committed, *inter alia*, an aggravated felony or a controlled substance offense. Subsequently, § 304 of IIRIRA repealed § 212(c) and replaced it with a narrower provision called "cancellation of removal."[2] *See United States v. Johnson*, 391 F.3d 67, 70 (2d Cir.2004). Under the cancellation of removal provision, codified at INA § 240A(a), the Attorney General lacks discretion to cancel the removal of a lawful permanent resident who has, *inter alia*, been convicted of an aggravated felony. 8 U.S.C. § 1229b(a).

On February 7, 1997, Lopez appeared at a deportation hearing before an IJ. Lopez requested and received an adjournment until March 10, 1997, to obtain an attorney. On this date, he appeared before the IJ and requested and received a second adjournment to obtain an attorney, but was told that this adjournment would be the last one granted to him. On April 22, 1997, Lopez appeared *pro se*, admitted the allegations in the Order to Show Cause, and conceded deportability. The IJ informed Lopez that he was ineligible for any relief from deportation, including dis-

---

1. On November 25, 2002, the Homeland Security Act of 2002, which created the new Department of Homeland Security (DHS), was enacted. *See* Pub.L. 107–296, 116 Stat. 2135 (codified as amended in scattered sections of the U.S.C.). The new law abolished the INS, which had been part of the Department of Justice, and reassigned the INS's functions to the newly-created DHS subdivisions. *See* 6 U.S.C. §§ 251, 271, 291, 542.

2. IIRIRA also replaced the term "deportation," which referred to the process by which an admitted alien is physically removed from the country, with the term "removal." *See Evangelista v. Ashcroft*, 359 F.3d 145, 147 n. 1 (2d Cir.2004). To avoid confusion, we refer to this process as "deportation."

cretionary relief under § 212(c) of the INA, and ordered Lopez deported to the Dominican Republic. The IJ also told Lopez of his right to appeal the ruling to the BIA.

Lopez appealed the IJ's decision, arguing that § 440(d) of AEDPA could not be applied retroactively to him and that he should have been afforded § 212(c) relief. On October 31, 1997, the BIA dismissed Lopez's appeal, applying § 440(d) of AEDPA to hold that Lopez's criminal conviction made him "statutorily ineligible" for § 212(c) relief. The BIA relied on *Matter of Soriano*, 1996 WL 426888, 21 I. & N. Dec. 516 (1997), which held that AEDPA's amendments to § 212(c) applied to proceedings pending when AEDPA became law and to those that commenced subsequent to AEDPA's passage.[3] Because Lopez's deportation proceedings began prior to April 1997 and became administratively final after October 1996, IIRIRA's transitional provisions governed Lopez's appeal. *See Henderson v. INS*, 157 F.3d 106, 117 (2d Cir.1998). The relevant transitional provisions, codified in IIRIRA § 309, stated that "[t]here shall be no appeal permitted" of deportation orders based on the alien's commission of an aggravated felony. 157 F.3d at 117. While Lopez was awaiting deportation, this Circuit held that habeas review under 28 U.S.C. § 2241 remained available under § 309's transitional provisions. *See Jean–Baptiste v. Reno*, 144 F.3d 212, 219 (2d Cir.1998). Thus, once Lopez received a final order of removal, he could have sought judicial review of his deportation order through a habeas petition even though he could not have filed a petition for review. On June 28,

1999, the government deported Lopez to the Dominican Republic. On June 25, 2001, the Supreme Court decided in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), that the provisions of IIRIRA and AEDPA repealing § 212(c) could not be applied retroactively to preclude § 212(c) relief for an alien who pled guilty to an aggravated felony prior to that section's repeal.[4] *Id.* at 326, 121 S.Ct. 2271. Accordingly, the analysis that led the IJ and the BIA to find Lopez statutorily ineligible for § 212(c) relief was legally incorrect because it erroneously applied IIRIRA and AEDPA retroactively to Lopez's case.

On May 25, 2002, officers of the New York City Police Department arrested Lopez in Queens, New York for, among other things, criminal possession of marijuana. On June 18, 2002, the INS obtained a warrant to arrest Lopez. The complaint and affidavit in support of the arrest warrant alleged that Lopez had illegally reentered the United States after being deported on account of an aggravated felony conviction. On July 16, 2002, an indictment was filed in the United States District Court for the Eastern District of New York, charging Lopez with illegal reentry in violation of 8 U.S.C. § 1326(a) and (b)(2).

On October 30, 2002, Lopez moved to dismiss the indictment by challenging his 1997 deportation order under 8 U.S.C. § 1326(d). The district court denied Lopez's motion on December 13, 2002. The court found that Lopez had exhausted his administrative remedies pursuant to § 1326(d)(1) because he had appealed his order of deportation to the BIA. Pursuant

---

**3.** The BIA held that AEDPA did not eliminate § 212(c) relief for those whose applications for such relief already were pending when AEDPA became law. *Id.* at 520.

**4.** The *St. Cyr* Court also held that AEDPA and IIRIRA did not divest federal courts of jurisdiction under the habeas corpus statute, 28 U.S.C. § 2241. *See* 533 U.S. at 314, 121 S.Ct. 2271.

to *United States v. Gonzalez–Roque,* 301 F.3d 39 (2d Cir.2002), however, the district court held that Lopez could not demonstrate, under § 1326(d)(2), that the erroneous retroactive application of the 1996 amendments to the INA to his case improperly denied him the opportunity for judicial review of his deportation order because he had failed to take advantage of the existing opportunity for habeas review. The district court declined to decide whether Lopez had satisfied the third prong of § 1326(d), which requires Lopez to show that his deportation proceeding was fundamentally unfair, but noted that it found "persuasive" the Fifth Circuit's decision in *United States v. Lopez–Ortiz,* 313 F.3d 225 (5th Cir.2002), that no due process violation existed from the denial of § 212(c) relief because such relief was discretionary. *Id.* at 231.

On March 18, 2003, Lopez entered a conditional plea of guilty, which permitted him to appeal the district court's denial of his motion to dismiss the indictment. Lopez's counsel submitted a sentencing letter on July 8, 2003, that included a request that the district court reconsider its ruling on the motion to dismiss the indictment on the ground that the IJ and the BIA violated Lopez's right to due process by not informing Lopez of his right to file a habeas corpus petition to challenge his removal order. Lopez's counsel made the same argument at Lopez's sentencing on August 1, 2003. The district court rejected counsel's request and sentenced Lopez principally to a fifty-seven month term of imprisonment. This appeal followed.

## DISCUSSION

■ Section 1326(d) of Title 8 permits an alien charged with illegal reentry under 8 U.S.C. § 1326(a) to challenge the underlying deportation order on which the illegal reentry charge is based. *See United*

*States v. Calderon,* 391 F.3d 370, 374 (2d Cir.2004). This provision effectively codified the Supreme Court's decision in *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). *See Copeland,* 376 F.3d at 66. In *Mendoza–Lopez,* the Supreme Court held that an alien charged with illegal reentry must have the opportunity to challenge his or her deportation order if those proceedings violated the alien's rights. 481 U.S. at 838–39, 107 S.Ct. 2148. We review *de novo* the district court's denial of Lopez's motion to dismiss the indictment on the basis of a collateral attack on his deportation order under § 1326(d). *United States v. Scott,* 394 F.3d 111, 116 (2d Cir.2005).

In order to successfully challenge a deportation order under § 1326(d), an alien must demonstrate that:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). The district court found, and the government does not challenge, that Lopez exhausted his administrative remedies because he filed an appeal with the BIA, which was dismissed. Lopez argues that he was improperly deprived of the opportunity for judicial review because neither the IJ nor the BIA informed him of his right to seek habeas review. Lopez further argues that his removal order was "fundamentally unfair" because the BIA's decision that he was statutorily ineligible for discretionary § 212(c) relief rested upon the erroneous retroactive application of AEDPA and IIR-IRA, and that this error prejudiced him.

The primary issue in this appeal is the second prong of § 1326(d)—whether Lopez was denied the opportunity for judicial review of his deportation order. For the reasons that follow, we hold that Lopez was deprived of the opportunity for judicial review within the meaning of § 1326(d)(2), albeit not for the reason advanced by appellant. On the basis of our holding in *Copeland*, 376 F.3d at 68–69, we vacate Lopez's conviction and remand to the district court to determine whether Lopez suffered prejudice from the erroneous information given to him by the IJ and BIA so as to render his deportation order fundamentally unfair within the meaning of § 1326(d)(3).

**I**

■ Lopez asserts that he was deprived of judicial review because the IJ and the BIA failed to inform him of the right to file a petition for habeas corpus under 28 U.S.C. § 2241 and that this failure violated his right to due process under the Fifth Amendment of the Constitution. We disagree.

■ As a general matter, due process does not require appellate review, even in criminal cases, as long as due process is provided in the initial forum. *See M.L.B. v. S.L.J.*, 519 U.S. 102, 110, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996) ("[T]he Federal Constitution guarantees no right to appellate review ...."); *cf. Ohio ex rel. Bryant v. Akron Metro. Park Dist. for Summit County*, 281 U.S. 74, 80, 50 S.Ct. 228, 74 L.Ed. 710 (1930) ("As to the due process clause of the Fourteenth Amendment, it is sufficient to say that, as frequently determined by this court, the right of appeal is not essential to due process, provided that due process has already been accorded in the tribunal of first instance."). The right to "*some* meaningful review" of an alien's underlying deportation order in a criminal prosecution for illegal reentry, however, arises because that order was issued on the basis of an administrative proceeding. *Mendoza–Lopez*, 481 U.S. at 838, 107 S.Ct. 2148 (emphasis in original). As the Supreme Court has explained, the use of an administrative determination reached in the absence of important constitutional safeguards as an element of a crime is "troubling," and the opportunity for judicial review in the first instance "legitimate[s] such a practice." *Id.* at 838 n. 15, 107 S.Ct. 2148. "This principle means at the very least that where defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." *Id.* at 838, 107 S.Ct. 2148.

Nothing in *Mendoza–Lopez*, however, indicates that this principle requires a right to notice about the availability of judicial review. The right to petition for habeas relief from an order of deportation is provided by statute. 28 U.S.C. § 2241; *St. Cyr*, 533 U.S. at 314, 121 S.Ct. 2271. Because "deportation is a drastic measure and at times the equivalent of banishment or exile," *Fong Haw Tan v. Phelan*, 333 U.S. 6, 10, 68 S.Ct. 374, 92 L.Ed. 433 (1948), the receipt of a final order of deportation ordinarily would put an alien on notice to look for remedies for that order. *Cf. City of West Covina v. Perkins*, 525 U.S. 234, 241, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999) (finding no right to notice of remedies under law where they are "established by published, generally available state statutes and case law"); *Atkins v. Parker*, 472 U.S. 115, 130, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) (same). Lopez nonetheless contends that because the IJ informed him of his right to BIA review of

his decision, the failure to inform him of habeas review created the misleading impression that no such review was available. It is true that the administrative nature of the removal proceedings may not lead an alien to look outside the administrative arena for relief, but this does not alter the fact that where judicial remedies are readily available in case law and statutes, due process is not offended where no notice of those remedies is provided. *Cf. Georcely v. Ashcroft*, 375 F.3d 45, 50 (1st Cir.2004) ("To charge [petitioner] with knowledge of his legal obligations may be unrealistic—he apparently does not read English—but such knowledge is expected of all ....").

Thus, in *Gonzalez–Roque*, we held that aliens are deemed to have constructive notice of the availability of habeas review even after the passage of IIRIRA left the scope of that availability in some dispute prior to the Supreme Court's decision in *St. Cyr*, 533 U.S. at 314, 121 S.Ct. 2271, in 2001. We explained that although "neither this Court nor the Supreme Court had yet held that such habeas petitions were proper after the passage of IIRIRA," it did not mean that the remedy was unavailable. *Gonzalez–Roque*, 301 F.3d at 50. Consequently, we reject Lopez's argument that his right to due process was violated merely because the IJ and the BIA failed to inform him about the availability of habeas review.

## II

That there is no stand-alone right to notice of the availability of judicial review, however, does not end the analysis. We turn to the question of whether judicial review was realistically available to Lopez—that is, whether defects in the administrative proceeding otherwise foreclosed judicial review. *See* 8 U.S.C. 1326(d)(2). We have addressed this question in a number of recent opinions. In *United States v.*

*Copeland*, 376 F.3d 61 (2d Cir.2004), we held that an alien was deprived of the opportunity for judicial review within the meaning of § 1326(d)(2) when "no realistic opportunity for judicial review by way of habeas review existed." 376 F.3d at 68. There, Copeland was ordered deported on November 27, 1996, *id.* at 69, after the IJ told him that he had no right to relief under INA § 212(c). *Id.* at 64. Although Copeland did not appeal this order of deportation, he filed a motion over two year later on September 22, 1998 to reopen his deportation proceedings and for a stay of deportation on the basis that the IJ had erroneously failed to inform him of his eligibility for § 212(c) relief. *Id.* at 64–65. After the IJ denied Copeland's motion to reopen, Copeland appealed the IJ's decision to the BIA on October 6, 1998, arguing that he was eligible for § 212(c) relief. *Id.* at 65. On November 24, 1998, however, he was deported before the BIA considered his appeal. *Id.*

In determining whether habeas review had been available to Copeland, we first concluded that "[t]he availability of habeas review is sometimes deemed to constitute an opportunity for judicial review." *Id.* at 68. Looking to the Supreme Court's decision in *Mendoza–Lopez*, however, we found that the technical existence of such review is not always sufficient. *Id.* As we explained, "[i]n *Mendoza–Lopez* [,] ... the Court held that [the petitioners] were deprived of judicial review where direct review was available but their waivers of appeal were not considered or intelligent." *Id.* Analyzing *Mendoza–Lopez* and our decision in *Gonzalez–Roque* together, we held that "where habeas review is technically available, judicial review will be deemed to have been denied if resort to a habeas proceeding was not realistically possible." *Id.* Although we did not define what constitutes a realistic possibility for

habeas review, we concluded that, in those two cases, "the consequences of the availability of habeas review turned on the temporal interval between the order and physical deportation during which the alien could have filed a habeas petition." *Id.*

Relying on *Copeland* in *United States v. Sosa*, 387 F.3d 131 (2d Cir.2004), we held that an alien who was deported within a month of his final deportation order and was not told of the availability of § 212(c) relief was denied the opportunity for judicial review within the meaning of § 1326(d)(2). *Id.* at 138. We found that "Sosa did not have a realistic possibility of seeking judicial review through a habeas petition" because in "the less than one month period after entry of his final deportation order and his deportation, Sosa was uncounseled and had little practical chance of finding a lawyer." *Id.* Moreover, it was not "realistic to expect him to have learned about the availability of Section 212(c) relief—then a complex issue—and to have filed a *pro se* habeas petition during the period before he was actually deported." *Id.*

*Copeland* and *Sosa* formed the basis for this Court's holding in *United States v. Calderon*, 391 F.3d 370 (2d Cir.2004). Calderon was ordered removed on May 24, 2000, at which time the IJ erroneously informed him that he was ineligible for a § 212(c) waiver of deportation. *Id.* at 372–73. Calderon then waived his right to appeal his deportation order to the BIA on June 6, 2000, and was removed from the country on July 5, 2000. *Id.* at 373. We held, *inter alia*, that

> Calderon did not have a realistic opportunity for judicial review by way of a habeas petition. In *Copeland*, there was legal uncertainty as to the availability of

such review, and in *Sosa*, the defendant was never informed of the availability of such review; here, Calderon was specifically told that no such review was available to him. In *Copeland* and *Sosa*, the speed of the deportation process rendered judicial review impracticable; the same is true here. Accordingly, we hold that Calderon satisfies the second prong of section 1326(d).

*Id.* at 376.

Here, as in *Copeland* and *Sosa*, Lopez appeared *pro se* and was told by the IJ, and later the BIA, that § 212(c) relief was no longer legally available to him.[5] Although the instant case partially resembles *Sosa* and *Calderon*, the interval between Lopez's final deportation order and his ultimate deportation to the Dominican Republic was more substantial than the intervals in those cases. Moreover, while the interval was shorter than in *Copeland*, Lopez did not have any procedural hurdle to overcome prior to seeking habeas review. Relying on *Gonzalez–Roque*, the government argues that the length of Lopez's detention gave Lopez ample opportunity to discover the availability of habeas review, such that Lopez was not denied the opportunity for judicial review under § 1326(d)(2). We disagree and hold, for the reasons that follow, that this argument is foreclosed in these circumstances by our decision in *Copeland*.

In *Gonzalez–Roque*, the petitioner was deportable because of an aggravated felony conviction but was nevertheless eligible for adjustment of status under INA § 245(a). 301 F.3d at 41–42. The petitioner failed to produce the paperwork needed for the grant of discretionary relief despite receiving three adjournments of

---

5. While Lopez proceeded *pro se* before the IJ, he was represented on his appeal to the BIA by Reverend Robert Vitaglione, a non-attorney representative accredited pursuant to 8 C.F.R. § 292.2(a).

his immigration hearing to do so. *Id.* at 42–43. The IJ refused to grant him a fourth adjournment but told him of the opportunity for appeal to the BIA and supplied him with a BIA appeals package. *Id.* at 43. The IJ also explained how to appeal, telling Gonzalez–Roque that, "[a]ll you [have] to do is, tell [the BIA] what the Judge did wrong." *Id.* at 47 (alterations in original). Although Gonzalez–Roque appealed his deportation order to the BIA on the ground that he was eligible for citizenship, he did not present a due process argument to the BIA. *Id.* at 43. On this record, we refused to excuse his failure to exhaust his administrative remedies with respect to his due process argument, finding that he had forfeited it by failing to raise it before the BIA. *Id.* at 48–49.

Alternatively, we observed that even had Gonzalez–Roque been able to satisfy the administrative exhaustion requirement under § 1326(d)(1), the availability of habeas review meant that he had not been improperly denied judicial review within the meaning of § 1326(d)(2). *Id.* at 49–50. We found that nothing in the text of IIRIRA established a limitation on or repeal of habeas review. *Id.* at 50. We noted further that during the period between the BIA's decision and Gonzalez–Roque's deportation, deportable criminal aliens successfully litigated habeas petitions in the Second Circuit. *Id.* We thus concluded that Gonzalez–Roque could not establish that he was denied the opportunity for judicial review. *Id.*

The facts of *Gonzalez–Roque* differ materially from those in the instant case. It is true that Lopez had constructive notice of the availability of habeas review. *See id.* at 50; *see also Henderson v. INS,* 157 F.3d 106, 122 (2d Cir.1998). Unlike the defendant in *Gonzalez–Roque,* however, Lopez received erroneous information from the IJ and the BIA about the avail-

ability of relief from deportation. Had the IJ (and subsequently the BIA) not provided erroneous information to Lopez about the legal availability of § 212(c) relief, it might have occurred to Lopez to look for other remedies at law. The fact that an administrative body told him that no such relief existed is a powerful deterrent from seeking judicial relief. In *Copeland,* we noted that Copeland's decision to pursue administrative remedies almost two years after he had waived appeal of his deportation order, rather than file a habeas petition, was not unreasonable because "the IJ's failure to give Copeland accurate information left Copeland in a dilemma." 376 F.3d at 70. Implicit in our ruling was the determination than an alien who waited approximately two years after receiving erroneous information from an IJ about the availability of relief from deportation before seeking administrative or judicial review of his deportation order, and who was deported without having had judicial review of that order, satisfied the requirement of § 1326(d)(2).

To be sure, we noted in *Copeland* that the ten months between Gonzalez–Roque's final order of deportation and his removal distinguished that case from *Mendoza–Lopez,* a case in which the petitioners were ordered deported on October 30, 1984, and deported on November 1, 1984. 376 F.3d at 68. While a ten-month interval between the final order of deportation and the deportation itself may be significant in cases like *Gonzalez–Roque,* where an alien is not misled by an IJ about the availability of relief from deportation, it is not significant here. In *Mendoza–Lopez,* the Eighth Circuit held that the aliens had been denied due process in the deportation proceeding because the IJ did not adequately explain the right to apply for waivers of deportation and then accepted waivers of appeal that were not knowing or intelligent. 481 U.S. at 839–40, 107 S.Ct. 2148. Because

the government did not challenge these findings in the Supreme Court, the Court assumed that these failures by the IJ violated the aliens' due process rights and concluded that the violation amounted to a complete denial of judicial review. *Id.* Thus, the Supreme Court did not rest its decision on the short period of time in which the aliens had to seek direct review of their deportation orders, but instead relied upon the unchallenged finding below in concluding that defects in the deportation proceeding had denied the aliens access to judicial review. *Id.* at 840, 107 S.Ct. 2148.

Moreover, the mere fact that we found that Gonzalez–Roque could not prove that he was denied judicial review because ten months passed between his final order of deportation and his removal from the country, *Gonzalez–Roque*, 301 F.3d at 50, does not undermine Lopez's claim here. While the interval of time in which it is realistically possible for an alien seek judicial review may be quite short where the alien has not received misinformation, the analysis differs where the government affirmatively misleads an alien about the availability of relief. *Cf. Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S.Ct. 582, 90 L.Ed. 743 (1946) (explaining that

equity will toll a statute of limitations because of fraud or concealment). We did not find Copeland's two-year delay in seeking to exhaust his administrative remedies unreasonable where he had been misinformed by the IJ. This reasoning is equally applicable to Lopez's failure to seek judicial review in the eighteen months between his final order of deportation and his deportation.[6]

Deportation, now removal, is a civil proceeding with its own administrative procedures. *See, e.g., INS v. Lopez–Mendoza,* 468 U.S. 1032, 1048–50, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984) (holding that the exclusionary rule does not apply to civil deportation proceedings and noting the rule's incompatibility with the streamlined administrative nature of such proceedings). Because it is an administrative process, deportation does not carry all of the protections of a criminal proceeding. Consequently, we have held that "IJs have special responsibilities towards aliens in removal proceedings." *Copeland,* 376 F.3d at 73; *see also Yang v. McElroy,* 277 F.3d 158, 162 & n. 3 (2d Cir.2002) (noting that, as administrative law judges, IJs have special responsibilities to develop the record). Moreover, although, as noted, deportation is a drastic act that should put

---

**6.** We are unpersuaded by our dissenting colleague's assertion that *Copeland* and the instant case may be distinguished because of the "legal uncertainties" created when Copeland waived his right to administrative review after being told by the IJ that § 212(c) relief was no longer available. *See post* at 92 – 93. Because the "procedural rock and a hard place" to which our dissenting colleague refers, *see id.,* came about as the result of Copeland's receipt of misinformation about the availability of § 212(c) relief, *see Copeland,* 376 F.3d 69 & nn. 6–7, we do not find this to be a principled basis on which to distinguish the cases.

Moreover, we have previously recognized the potential for logical overlap between a § 1326(d)(1) challenge and a § 1326(d)(2) challenge where an alien has received misinformation about the availability of § 212(c) relief. *See Sosa,* 387 F.3d at 136. In *Sosa,* we explained:

Of course, an invalid waiver of the right to administrative exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid. This was the case in *Mendoza–Lopez* itself, for example. There, the Court focused on the aliens' uninformed waivers of their rights to judicial review, but their misunderstanding as to the availability of Section 212(c) relief necessarily caused their waivers of administrative remedies to be invalid as well.

*Id.* at 136 (citing *Mendoza–Lopez,* 481 U.S. at 840, 107 S.Ct. 2148).

an alien on notice to search the law for remedies, its administrative nature makes it less likely that an alien would immediately look outside the administrative process for relief. In these circumstances, the IJ and BIA's affirmative misstatements to Lopez that he was not eligible for any relief from deportation functioned as a deterrent to seeking relief.[7] Given the misinformation supplied to Lopez by both the IJ and the BIA, there is no reasonable basis on which to distinguish this case from our holding in *Copeland* and, accordingly, we find that Lopez was denied a realistic opportunity for judicial review within the meaning of § 1326(d)(2).

## III

█ Finally, § 1326(d)(3) requires that Lopez demonstrate that his deportation proceeding was "fundamentally unfair." This statutory prong requires a showing of "both a fundamental procedural error and prejudice resulting from the error." *Perez*, 330 F.3d at 104 (citation and internal quotation marks omitted). The district court did not decide whether Lopez had satisfied this prong but noted that it found persuasive the Fifth Circuit's decision in *Lopez–Ortiz*, which held that the denial of the right to apply for § 212(c) relief was not a due process violation because such relief was discretionary. 313 F.3d at 231.

We have since rejected the analysis of *Lopez–Ortiz*, holding in *Copeland* that "a failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3)." 376 F.3d at 71.

"[P]rejudice is shown where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted Section 212(c) relief." *Id.* at 73. We noted in *Scott* that " 'a reasonable probability is a probability sufficient to undermine confidence in the outcome.' " 394 F.3d at 118 (quoting *Strickland v. Washington*, 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (alteration omitted). In *Strickland*, the Supreme Court stated that "[t]he governing legal standard plays a critical role in defining the question to be asked in assessing ... prejudice." 466 U.S. at 695, 104 S.Ct. 2052. Here, the standard against which prejudice is to be measured is the IJ's broad discretion to grant § 212(c) relief. In analyzing whether an alien suffered prejudice under § 1326(d)(3) resulting from an IJ's failure to consider his or her application for § 212(c) relief, district courts must balance "the adverse factors evidencing an alien's undesirability as a permanent resident with the social and

---

7. Indeed, in *Copeland*, we concluded that misinformation from an IJ about the availability of § 212(c) relief from deportation is significant for establishing prejudice under § 1326(d)(3). 376 F.3d at 73. We explained that "prejudice is shown where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted Section 212(c) relief." *Id.* We also considered two cases involving attorney failure to apply for § 212(c) relief. In *United States v. Perez*, 330 F.3d 97 (2d Cir.2003), we held that an attorney's failure to file a petition for § 212(c) relief on the alien's behalf amounted to ineffective assistance of counsel and, in turn, deprived the alien of the opportunity for judicial review under § 1326(d)(2). *Id.* at 101–03. Similarly, in *United States v. Scott*, 394 F.3d 111 (2d Cir.2005), a § 1326(d) challenge to an underlying deportation order, we held that Scott had been deprived of the opportunity for judicial review within the meaning of § 1326(d)(2) because of his attorney's failure to file a petition for § 212(c) relief and the BIA's failure to notify Scott of its dismissal of his appeal. *Id.* at 114, 117. Although we do not hold here that the IJ's error, on its own, deprived Lopez of the opportunity for judicial review, we consider that error to have made resort by Lopez to a habeas proceeding unlikely.

humane considerations presented in his behalf to determine whether the granting of Section 212(c) relief appears in the best interests of this country." *Sosa*, 387 F.3d at 138 (citations and internal quotation marks omitted). As we stated in *Copeland*, a district court evaluating prejudice should "tak[e] into account actual cases in which similarly situated aliens have been granted or denied discretionary relief.", 376 F.3d at 73–74. Consideration should also be given to the BIA's guidance in *Marin* that, "[i]n some cases, the minimum equities inherent in eligibility for section 212(c) relief ... may be sufficient in and of themselves to warrant favorable discretionary action" and that, "[a]s the negative factors grow more serious, it becomes incumbent upon the applicant to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities." 16 I. & N. Dec. 581, 585 (BIA 1978).

Because of its disposition of this case, the district court did not decide whether Lopez·suffered prejudice within the meaning of § 1326(d)(3). We therefore remand for a determination of whether it is reasonably probable that Lopez would have been granted § 212(c) relief had he been given a genuine opportunity to apply for it.

## CONCLUSION

For the foregoing reasons, we VACATE Lopez's conviction and REMAND the case for a determination of whether the government's erroneous information about the availability of § 212(c) relief rendered Lopez's deportation order fundamentally unfair.

RAGGI, concurring in part and dissenting in part.

Jermi Francisco Lopez appeals his conviction for illegal reentry after deportation, *see* 8 U.S.C. § 1326(a) and (b)(2), on the ground that the district court erroneously denied him the opportunity to challenge the underlying deportation order. The law expressly prohibits such challenges in the context of criminal reentry prosecutions unless the alien defendant satisfies three statutory conditions. He must demonstrate that

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).

Lopez submits that the district court erred in concluding that he failed to satisfy the second of these mandates. He asserts that he carried this burden by showing that the IJ and the BIA each failed to inform him of the availability of judicial review through a petition for a writ of habeas corpus under 28 U.S.C. § 2241. I join my colleagues in the majority in concluding that the lack of specific notice to Lopez as to the availability of habeas review did not constitute a defect in his administrative proceedings that deprived him of judicial review. *See ante* at 95 – 96. I cannot, however, join in their conclusion that such a deprivation of judicial review was practically effected by IJ and BIA errors in telling Lopez that he was ineligible for discretionary relief from deportation under former INA § 212(c), *see* 8 U.S.C. § 1182(c). *See ante* at 96 – 100. To the extent the majority reads *United States v. Copeland*, 376 F.3d 61 (2d Cir. 2004), to compel this conclusion, I must respectfully dissent.

In *Copeland*, this court reiterated that "[t]he availability of habeas review is

sometimes deemed to constitute an opportunity for judicial review." *United States v. Copeland*, 376 F.3d at 68 (citing *United States v. Gonzalez–Roque*, 301 F.3d 39, 49–50 (2d Cir.2002) (holding alien not denied judicial review because habeas was available)). At the same time, however, the court instructed that the "technical availability" of habeas review does not necessarily foreclose a defendant from satisfying § 1326(d)(2). *Id.* at 69. It explained that, even "where habeas review is technically available, judicial review will be deemed to have been denied if resort to a habeas proceeding was not realistically possible." *Id.* *Copeland* identified two circumstances that could demonstrate the realistic impossibility necessary to satisfy § 1326(d)(2): (1) lack of adequate time to pursue habeas review, and (2) "legal uncertainties" as to the availability of such review. *Id.* In my view, this case presents neither circumstance.[1]

With respect to the first, *Copeland* observed that deportation proceedings effectively deprived an alien of judicial review "where the interval between entry of the final deportation order and the physical deportation is too brief to afford a realistic possibility of filing a habeas petition." *Id.* In making this point, *Copeland* distinguished the two-day interval between the deportation order and physical deportation in *United States v. Mendoza–Lopez*, 481 U.S. 828, 830, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), from the ten-month interval between the final agency action and deportation in *United States v. Gonzalez–Roque*, 301 F.3d at 44. *See United States v. Copeland* 376 F.3d at 68. Following this precedent, this court has held one-month intervals between the entry of a final deportation order and deportation too brief a

period to afford a realistic possibility of filing a habeas petition. *See United States v. Calderon*, 391 F.3d 370, 376 (2d Cir. 2004); *United States v. Sosa*, 387 F.3d 131, 138 (2d Cir.2004). Defendants in such circumstances have been found to satisfy § 1326(d)(2).

Clearly, the chronology of this case is not analogous to *Mendoza–Lopez, Calderon*, and *Sosa.* After the October 31, 1997 dismissal of his BIA appeal, Lopez remained in the United States for twenty months before being deported on June 28, 1999. The majority nevertheless concludes that Lopez was denied the opportunity for judicial review throughout this period because of misinformation communicated by the IJ and BIA regarding Lopez's eligibility for § 212(c) relief. *See ante* at 99. ("While the interval of time in which it is realistically possible for an alien to seek judicial review may be quite short where the alien has not received misinformation, the analysis differs where the government affirmatively misleads an alien about the availability of relief."). It concludes that such misinformation functions as a sufficiently "powerful deterrent" to an alien seeking judicial relief for us to equate it to the denial of such review for purposes of § 1326(d)(2). *Ante* at 98. The majority further observes that, in *Copeland*, this court "did not find Copeland's two-year delay in seeking to exhaust his administrative remedies unreasonable where he had been misinformed by the IJ" as to the availability of § 212(c) relief. *Ante* at 99 – 100. It holds that "[t]his reasoning is equally applicable to Lopez's failure to seek judicial review." *Ante* at 99. I disagree.

---

1. It is unnecessary here to explore the possibility that other circumstances might also demonstrate the realistic impossibility of pursuing technically available habeas relief be-

cause I do not understand the majority to view Lopez's case as requiring any expansion of *Copeland*'s reasoning. *See ante* at 98, 99 – 100.

*Copeland* presented an unusual fact situation that prompted the court to recognize "legal uncertainties as to the availability of habeas review" before deportation as a circumstance that, like lack of adequate time, could render a habeas petition realistically impossible. *United States v. Copeland,* 376 F.3d at 69. In *Copeland,* an alien who was misinformed as to his ineligibility for § 212(c) relief then waived his right to administrative appeal of his deportation order. *See id.* at 64. As a result of this waiver, Copeland was caught between a procedural rock and a hard place in pursuing judicial review via habeas. On the one hand, if Copeland filed a habeas petition asserting his right to § 212(c) consideration, he faced a likely administrative exhaustion challenge. *See id.* at 69; *see also Theodoropoulos v. INS,* 358 F.3d 162, 171 (2d Cir.2004). On the other hand, if he tried to cure his exhaustion failure by filing a motion to reopen his administrative proceedings, he could (and did) find himself deported before he could avail himself of habeas review. *See United States v. Copeland,* 376 F.3d at 69–70; *see also Swaby v. Ashcroft,* 357 F.3d 156, 160 n. 8 (2d Cir.2004) (recognizing that habeas petitions filed by aliens subject to INA § 106 may be mooted by deportation). The court recognized that Copeland might have filed a habeas petition challenging his administrative appeal waiver as uninformed and involuntary. *See United States v. Copeland,* 376 F.3d at 70. Nevertheless, it concluded that he could not be faulted for first proceeding administratively: "Given the [exhaustion] dilemma created by the IJ's error and the clear congressional preference for administrative exhaustion reflected in Section 1326(d)(1), we hold that Copeland's resort to administrative remedies was not unreasonable ...." *Id.* The court reasoned that there were sufficient "legal uncertainties as to the availability of habeas review" to support the conclusion

that deporting Copeland before he exhausted his administrative challenge satisfied § 1326(d)(2). *Id.* at 69. Nowhere did the court indicate that it would have excused Copeland's two-year failure to pursue a habeas petition in the absence of legal uncertainties as to the availability of such relief, or in the absence of a pending "reasonable" administrative challenge that, once exhausted, would permit habeas review. Rather, because Copeland was deported before these administrative proceedings were concluded, the court held that he was effectively deprived of habeas review on the dual grounds of "lack of time" and "legal uncertainties" as to habeas availability. *Id.*

Like Copeland, Lopez was misinformed as to his eligibility for discretionary § 212(c) relief. Otherwise, however, Lopez's case is distinguishable from Copeland's in important respects that prevent me from concluding that Lopez satisfies § 1326(d)(2). Notably, the IJ's § 212(c) error did not prompt Lopez to waive any rights to review of his deportation order. Indeed, Lopez specifically appealed the IJ's § 212(c) ineligibility determination to the BIA. Precisely because Lopez thus satisfactorily exhausted administrative review of this claim, in his case, unlike *Copeland,* there were no "legal uncertainties as to the availability of habeas relief" persisting throughout the twenty months before his deportation. *United States v. Copeland,* 376 F.3d at 69. The only uncertainties pertained to the merits of his § 212(c) argument, not the availability of habeas review.

In drawing this distinction, I do not excuse the IJ or BIA errors in this case or ignore the fact that "IJs have special responsibilities toward aliens in deportation proceedings." *Id.* at 73; *see ante* at 99. But we do not lightly assume the deprivation of judicial review in circumstances

where the courts would undoubtedly have entertained a habeas corpus petition. *See United States v. Gonzalez–Roque*, 301 F.3d at 49–50. *Copeland* does not hold that agency misinformation as to an alien's eligibility for § 212(c) relief, by itself, equates to a deprivation of judicial review on such a claim. Such a conclusion was warranted in *Copeland* only because the misinformation was closely followed by an administrative appeal waiver that gave rise to legal uncertainties as to the availability of habeas review. But no such conclusion is warranted in Lopez's case where the § 212(c) misinformation did not deter him from pursuing the § 212(c) issue on administrative appeal and where he had twenty months to file a habeas petition for judicial review.

To be sure, the law regarding the availability of habeas review for aliens in Lopez's situation was unsettled at the time of his 1997 deportation order. Such uncertainty, however, "does not mean that the remedy was unavailable." *United States v. Gonzalez–Roque*, 301 F.3d at 50. As *Gonzalez–Roque* observed, even though, as of 1997, neither this court nor the Supreme Court had yet specifically ruled that IIRIRA did not foreclose habeas relief, the Constitution strictly limited suspension of the writ of habeas corpus to circumstances not at issue in IIRIRA, *see id.* (citing U.S. Const. art. I, § 9, cl. 2), and "nothing in the text of IIRIRA suggests that Congress repealed § 2241 or limited its scope," *id.* In fact, a number of aliens facing deportation did pursue habeas petitions in the district courts of this circuit even before we clarified the right to do so in *Jean-Baptiste v. Reno*, 144 F.3d 212, 219 (2d Cir.1998). *See United States v. Gonzalez–Roque*, 301 F.3d at 50 (collecting district court habeas cases). Of particular relevance, habeas petitions were successfully litigated in this circuit by deportable aliens who, like Lopez, were misinformed by the

IJ and BIA that they were ineligible for § 212(c) relief. *See, e.g., Mojica v. Reno*, 970 F.Supp. 130, 140, 142, 178–79 (E.D.N.Y.1997) (concluding that AEDPA restrictions on § 212(c) relief are not retroactive), *aff'd in part, dismissed in part sub nom., Henderson v. INS*, 157 F.3d 106 (2d Cir.1998).

In any event, whatever uncertainty there may have been regarding the availability of habeas relief in 1997 at the time Lopez's deportation order became final, it was resolved by our ruling in *Jean–Baptiste* in May 1998. This was a full year before Lopez's June 1999 deportation. In light of Lopez's demonstrated awareness that he could administratively appeal his eligibility for § 212(c) relief, I cannot conclude that, after *Jean–Baptiste*, it was "not realistically possible" for him to pursue a similar habeas corpus challenge simply because the BIA reiterated the IJ's ineligibility error.

In sum, because Lopez had twenty months to pursue habeas review of his deportation order and because there were no legal uncertainties—certainly not for the year after May 1998—as to the availability of such judicial review for aliens in Lopez's situation, I cannot agree with my colleagues in the majority that *Copeland* requires us to hold that Lopez satisfies § 1326(d)(2) simply because he was twice misinformed as to his eligibility for § 212(c) relief. Accordingly, I respectfully dissent from the majority's decision to vacate the judgment of conviction and to remand this case for further consideration of § 1326(d)(3). Instead, I vote to affirm Lopez's conviction for unlawful reentry.