[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-13005
Non-Argument Calendar
_____

D.C. Docket No. 1:12-cr-20153-KMM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE REYNALDO LOPEZ-SOLIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(January 18, 2013)

Before TJOFLAT, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Jose Reynaldo Lopez-Solis appeals his conviction for illegal reentry after

removal, 8 U.S.C. § 1326(a), (b)(1).  For the reasons set forth below, we affirm

Lopez-Solis's conviction.

I.

An indictment charged Lopez-Solis with illegal reentry into the United States after having been removed in 1998.  Lopez-Solis filed a motion to dismiss the indictment and argued that he could collaterally challenge the predicate removal proceedings, pursuant to 8 U.S.C. § 1326(d), as the proceedings violated his due process rights.  According to Lopez-Solis, an immigration judge ("IJ") erroneously ordered Lopez-Solis removed on the basis that his prior felony driving under the influence ("DUI") convictions were crimes of violence/aggravated felonies, and the Board of Immigration Appeals ("BIA") affirmed the IJ's determination.  Moreover, neither the IJ nor the BIA informed Lopez-Solis of his right to judicial review of the removal proceedings, in violation of his due process rights articulated in *United States v. Mendoza-Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987).

The transcript of Lopez-Solis's 1998 hearing before the IJ reflected that Lopez-Solis proceeded *pro se* during the hearing, and, after the IJ ordered Lopez-Solis removed from the United States, the IJ informed Lopez-Solis that he had the right to appeal the decision to "a higher court."  The IJ asked Lopez-Solis whether he wanted to file the appeal forms or whether he wished to waive an appeal and accept the IJ's decision as a final order.  Lopez-Solis indicated that he did not know whether he wished to appeal.  The IJ stated that he would review the

2

appeal forms with Lopez-Solis, as soon as the proceeding was off of the record. Lopez-Solis also filed an affidavit in support of his motion to dismiss the indictment, and he attested that, until the instant criminal proceedings, he was unaware that he had a right to have the federal courts review his removal order.

The government argued that Lopez-Solis's motion to dismiss the indictment should be denied, and a magistrate judge agreed with the government. Citing to the persuasive authority of the Second and Sixth Circuits, the magistrate determined that the immigration officials' failure to advise Lopez-Solis that he had the right to seek judicial review of his removal order did not violate due process. The magistrate noted that the instant case differed significantly from *Mendoza-Lopez*, where the government had conceded that the underlying hearing had violated the defendants' due process rights. In this case, the government made no such concession. Moreover, the IJ had informed Lopez-Solis that he could appeal to the BIA, and he did appeal to the BIA. After the BIA dismissed his appeal, judicial review of the removal proceedings was available to Lopez-Solis, despite him not actually appealing to a federal court. As Lopez-Solis had failed to show that he was deprived of the opportunity for judicial review, he had not sustained his burden under § 1326(d), and thus, the magistrate recommended denying Lopez-Solis's motion.

After considering Lopez-Solis's objections to the magistrate's recommendation, the district court adopted the magistrate's recommendation and, thus, denied Lopez-Solis's motion to dismiss the indictment. Following a bench trial, the district court found Lopez-Solis guilty of illegal reentry of an alien.

## II.

On appeal, Lopez-Solis asserts that his conviction should be reversed because he was improperly deprived of his right to judicial review of the removal proceedings, as no one told him that he had the right to judicially appeal the underlying removal order. He argues that *Mendoza-Lopez* requires a showing that he made a considered and intelligent waiver of his right to judicial review of the proceedings. He contends that, for a waiver to be considered and intelligent, the government must have advised him of his right to judicial review of his immigration proceedings. He asserts that the circuits that have not required notice of the right to judicial review have failed to analyze the constitutional problems inherent in allowing the unreviewed, erroneous legal conclusions of an administrative body to serve as conclusive proof in a criminal case. Lopez-Solis further asserts that the Supreme Court has since determined that a DUI offense is not a deportable offense. According to Lopez-Solis, the IJ's removal order was fundamentally unfair, as the outcome was affected by the IJ's mistake of law and

4

may have been different had the IJ or BIA explained to Lopez-Solis his right to appeal to an Article III court.

We review *de novo* a defendant's collateral challenge to the validity of a removal order in the context of a criminal proceeding. *United States v. Zelaya*, 293 F.3d 1294, 1297 (11th Cir. 2002). An offense under 8 U.S.C. § 1326(a) occurs where an alien who has been deported or removed from the United States later reenters without first obtaining permission from the Attorney General. *See* 8 U.S.C. § 1326(a)

In *Mendoza-Lopez*, decided in 1987, the Supreme Court established that an alien who is being prosecuted under § 1326 for illegal reentry following deportation may, in certain circumstances, collaterally attack the legality of the prior deportation. 481 U.S. at 839, 107 S.Ct. at 2156. The Supreme Court held that, where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceedings. *Id.* at 837-38, 107 S.Ct. at 2155. Because the government had conceded that the defects in the underlying proceeding at issue in *Mendoza-Lopez* rendered the deportation fundamentally unfair, the Court accepted that the deportation hearing violated the respondents' due process rights. *Id.* at 839-40, 107 S.Ct. at 2156. Despite this concession, the Court nevertheless required the violation of the respondents' rights

5

to amount to a complete deprivation of judicial review of the deportation determination before the determination could be collaterally attacked. *Id.*

The Supreme Court determined that the violation of the respondents' rights amounted to a complete deprivation of judicial review of the deportation proceedings because the respondents' waivers of their rights to appeal were not considered or intelligent. *Id.* at 840, 107 S.Ct. at 2156. The Supreme Court, however, did not determine that the waivers were unconsidered and unintelligent on the sole basis that the IJ had failed to fully explain the respondents' rights to appeal their deportation orders to a federal court. *See id.* at 839-42, 107 S.Ct. at 2156-57. Rather, the Court mentioned the district court's finding that the IJ had failed to explain adequately the respondents' rights concerning suspension of deportation, a discretionary remedy that provided relief from deportation, and finding that the respondents had a lack of understanding about the proceedings. *Id.* at 831-32, n.3, 107 S.Ct. at 2151-52, n.3. The Supreme Court determined that the respondents were deprived of any basis to appeal, as the only relief for which they would have been eligible was not adequately explained to them. *Id.* at 839-40, 842, 107 S.Ct. at 2156-57. Thus, the Supreme Court concluded that the respondents' waivers of their right to appeal were unconsidered and unintelligent in large part because they did not understand that they were eligible to apply for suspension of deportation. *Id.*

6

Following *Mendoza-Lopez*, Congress amended § 1326 by adding subsection (d), which provides that an alien charged with violating § 1326 may not challenge the validity of the underlying deportation order unless the alien can demonstrate that: (1) the alien exhausted any administrative remedies that may have been available to challenge the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d); *see* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, § 441(a), 110 Stat. 1214 (1996).

The circuits are split as to whether the failure to advise an alien of the right to judicial review of a deportation or removal order improperly deprives the alien of the opportunity for judicial review, such that the order can be collaterally attacked in a criminal proceeding. In *United States v. Santos-Vanegas*, before § 1326(d) was enacted, the Eighth Circuit determined that the government could not use Santos-Vanegas's earlier deportation order as a basis for his § 1326 conviction where the IJ and BIA had never informed Santos-Vanegas of his right to appeal the administrative decision in federal court. 878 F.2d 247, 251 (8th Cir. 1989). The Eighth Circuit noted that the record showed that Santos-Vanegas was confused about the deportation order issued by the IJ and its consequences. *Id.* at 250-51. Thus, the Eighth Circuit concluded that the government had an

7

affirmative obligation to advise an alien effectively of his right to judicial review of deportation proceedings if the government later wanted to use the deportation to prove a criminal offense.  *Id.* at 251.

The Ninth Circuit has held that an alien may collaterally attack the underlying removal order in his § 1326 criminal proceeding, where he did not validly waive his right to appeal the removal order.  *See United States v. Reyes-Bonilla*, 671 F.3d 1036, 1039, 1043-45 (9th Cir.) (providing that the alien's general right to appeal the removal decision to either the BIA or to the federal courts was not explained satisfactorily, and thus, the alien had satisfied § 1326(d)(1)-(2)), *cert. denied*, 133 S.Ct. 322 (2012).  The Second Circuit, however, has held that *Mendoza-Lopez* does not provide that an alien has a right to notice about the availability of judicial review of a deportation order before that order is relied upon in a criminal proceeding.  *United States v. Lopez*, 445 F.3d 90, 95, 100 (2d Cir. 2006) (providing that, despite there being no stand-alone right to notice of the availability of judicial review, Lopez was denied a realistic opportunity for judicial review, as the IJ and BIA had misinformed Lopez).  The Second Circuit reasoned that the receipt of a final order of deportation should put an alien on notice to look for remedies for that order.  *Id.* at 95.  Further, judicial remedies are readily available in case law and statutes, and thus, due process was not offended where no notice of those remedies was provided.  *Id.* at 96.

8

Similarly, the Sixth Circuit has held that *Mendoza-Lopez* does not require immigration officials to advise an alien of a right to judicial appeal, as opposed to a general right to appeal, at deportation hearings. *United States v. Escobar-Garcia*, 893 F.2d 124, 126 (6th Cir. 1990) (providing that the defendant had expressed no desire to appeal his deportation order). Rather, general explanations at the conclusion of a deportation hearing advising the alien of his right to appeal the deportation order satisfy *Mendoza-Lopez* and provide the alien with notice of his appellate rights sufficient to satisfy due process. *Id.* The Tenth Circuit has also rejected an alien's argument that he was not informed of his right to judicial review, as the record showed that he was notified of his right to appeal an adverse decision by the IJ and the IJ had noted that the alien had waived his right to appeal. *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1110-11 (10th Cir. 2005). As the record did not indicate that the notification of his right to appeal was insufficient or that the waiver was otherwise inadequate, the Tenth Circuit declined to presume that the removal hearing improperly precluded the alien's right to judicial review. *Id.* at 1111.

In this case, the government has conceded that Lopez-Solis exhausted his administrative remedies, as required by § 1326(d)(1). Next, as to § 1326(d)(2), Lopez-Solis was not deprived of his right to judicial review of his 1998 removal order simply because he was not informed of this right during his removal

9

proceedings.  Unlike the aliens in *Mendoza-Lopez* and *Santos-Vanegas*, Lopez-Solis expressed no confusion over the IJ's deportation order and its consequences.  *See Mendoza-Lopez*, 481 U.S. at 831-32, 839-40, 842, 107 S.Ct. at 2151-52, 2156-57; *Santos-Vanegas*, 878 F.2d at 250-51.  The IJ informed Lopez-Solis of his right to appeal, and Lopez-Solis appealed to the BIA.  Further, based on the record, the IJ did not make any affirmative misstatements that misled Lopez-Solis into believing that he could not appeal to federal court.  Lopez-Solis's case also differs from *Reyes-Bonilla*, 671 F.3d at 1043-45, where the Ninth Circuit concluded that the record demonstrated that the alien did not understand an immigration official's general notice of his right to appeal.  Here, Lopez-Solis did receive a general notice of his right to appeal and was able to appeal to the BIA.

We agree with the Second Circuit's persuasive holding that, in an ordinary case, the receipt of a final order of removal puts an alien on notice to look for remedies of that order.  *Lopez*, 445 F.3d at 95.  Although the administrative nature of the removal proceedings may not lead an alien to look outside the administrative arena for relief, where judicial remedies are readily available in case law and statutes, due process is not offended where no notice of those remedies is provided. *Id.* at 95-96; *see Escobar-Garcia*, 893 F.2d at 126.  Accordingly, we reject Lopez-Solis's argument that his due process rights were violated because the IJ and the BIA failed to specifically inform him about the availability of judicial

10

review.  Because Lopez-Solis failed to show that he has satisfied all of the requirements of § 1326(d), the district court did not err in rejecting Lopez-Solis's collateral challenge to his removal proceedings.

For the foregoing reasons, we affirm Lopez-Solis's conviction.

**AFFIRMED.**