**UNITED STATES of America,**
**Appellant,**

v.

**Vitalio CALDERON, Defendant–**
**Appellee.**

**Docket No. 03–1091.**

United States Court of Appeals,
Second Circuit.

Argued: Sept. 11, 2003.

Decided: Dec. 1, 2004.

Scott B. Klugman, Assistant United States Attorney (Emily Berger, Assistant United States Attorney, of counsel; Roslynn Mauskopf, United States Attorney for the Eastern District of New York, on the brief), United States Attorney's Office for the Eastern District of New York, Brooklyn, NY, for Appellant.

Philip L. Weinstein, The Legal Aid Society, for Defendant–Appellee.

Before: CABRANES and PARKER, Circuit Judges, and RAKOFF, District Judge.*

JOSÉ A. CABRANES, Circuit Judge.

The Government appeals from an order of the United States District Court for the Eastern District of New York (Jack B. Weinstein, *Judge*) dismissing an indictment charging Vitalio Calderon with illegally reentering the United States, in violation of 8 U.S.C. § 1326(a). In the District Court, Calderon collaterally attacked the validity of his deportation order under 8 U.S.C. § 1326(d) on the ground that he was not accorded due process in his deportation hearing. The District Court agreed, and accordingly dismissed the section 1326(a) indictment, holding that the deportation order was not a valid element of the reentry charge.

We affirm the District Court's finding in favor of Calderon with respect to his section 1326(d) collateral attack on the deportation order. We affirm in spite of Calderon's failure to satisfy one of the requirements of section 1326(d), namely, the requirement, under section 1326(d)(1), of exhaustion of all available administrative remedies.[1] We do so because Calderon's

---

* The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

1. Calderon concedes that, although the Government did not make an exhaustion argument in the District Court, our Court has the power to consider the issue. *See Rosario v. United States,* 164 F.3d 729, 732 (2d Cir.1998) (holding that the Court of Appeals can raise procedural default issues *sua sponte* even

waiver of administrative review was not knowing and intelligent—circumstances that this Court has held may excuse a defendant from satisfying the requirements of section 1326(d)(1). Because we find his section 1326(d) collateral attack otherwise valid, we affirm the District Court's findings with respect to both the validity of Calderon's section 1326(d) challenge and the resulting dismissal of the indictment.

## BACKGROUND

The following statement of facts is drawn principally from the District Court's Memorandum and Order of January 9, 2003. *See United States v. Calderon,* No. 02 CR 0691, 2003 WL 1338943 (E.D.N.Y. Jan.9, 2003).

Calderon, a citizen of the Dominican Republic, entered the United States in 1988 and became a lawful permanent resident in 1990. In 1994, he pleaded guilty to the possession of a controlled substance with intent to distribute, a third-degree crime under New Jersey law. He was sentenced to probation for 3 years with the condition that he serve 180 days in prison. In March 1998, Calderon was convicted in a New Jersey Municipal Court of criminal mischief and assault by automobile and sentenced to imprisonment for 30 days.

On May 3, 2000, upon Calderon's return from a trip to the Dominican Republic, the Immigration and Naturalization Service ("INS") placed him in custody and began removal proceedings based on the 1994 conviction. The INS charged that he was subject to removal pursuant to section 212(a)(2)(A)(i)(II) of the Immigration and Nationality Act ("INA"),[2] which renders inadmissable an alien convicted of violating a state law relating to a controlled substance, as well as INA § 212(a)(2)(C),[3] which bars the admission of an alien who an immigration officer has reason to believe is involved in illicit trafficking in a controlled substance.

After a May 24, 2000 hearing, the Immigration Judge ("IJ") ordered Calderon removed, and advised him that he was ineligible for discretionary relief from removal under former section 212(c), which permitted an alien to seek a waiver of deportation under specified conditions.[4] The IJ's ad-

---

when the Government has waived the argument by failing to raise it below).

**2.** This provision provides in relevant part that "any alien convicted of, or who admits having committed, or who admits committing acts which constitute the essential elements of (I) a crime involving moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime, or (II) a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(i).

**3.** This provision provides that "[a]ny alien who the consular officer or the Attorney General knows or has reason to believe—(i) is or has been an illicit trafficker in any controlled substance or in any listed chemical (as defined in section 802 of title 21), or is or has

been a knowing aider, abettor, assister, conspirator, or colluder with others in the illicit trafficking in any such controlled or listed substance or chemical, or endeavored to do so; or (ii) is the spouse, son, or daughter of an alien inadmissible under clause (i), has, within the previous 5 years, obtained any financial or other benefit from the illicit activity of that alien, and knew or reasonably should have known that the financial or other benefit was the product of such illicit activity, is inadmissible." 8 U.S.C. § 1182(a)(2)(C).

**4.** Former section 212(c) of the INA, 8 U.S.C. § 1182(c) (1994) ("212(c)"), provided that "[a]liens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the

vice to Calderon that he was ineligible for section 212(c) relief was based upon a then-prevalent misinterpretation of two 1996 statutory changes to the INA, which repealed section 212(c).[5]  Since the IJ's advice to Calderon in 2000, that misinterpretation has been corrected by the Supreme Court. *See INS v. St. Cyr,* 533 U.S. 289, 326, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (holding that section 440(d) of the AEDPA-which repealed section 212(c)— could not be applied retroactively to deny section 212(c) relief to an alien who pleaded guilty to a crime prior to 1996).

Calderon was represented at the time of his removal proceedings by attorney Antonio R. Espinosa.  After the hearing, Espinosa advised Calderon that both the IJ and the Board of Immigration Appeals ("BIA") were bound to follow the law that made Calderon statutorily ineligible for section 212(c) relief from removal.  He further advised that Calderon's only remedy was to petition for a writ of habeas corpus, and that pursuing a habeas petition would be expensive and would take a substantial amount of time, during which Calderon would have to remain in custody.

A letter dated June 6, 2000 from Espinosa to counsel for the INS stated that defendant accepted the order of the IJ as final and would not appeal it.  Calderon was then removed from the United States on July 5, 2000.

On May 18, 2002, Calderon attempted to reenter the country through John F. Kennedy International Airport.  He was arrested at the airport and charged with attempted illegal reentry after deportation for an aggravated felony conviction. *Calderon,* 2003 WL 1338943, at \*2.

Calderon moved to dismiss his indictment on the ground that the deportation proceeding in May 2000 violated his right to due process of law, in light of the IJ's erroneous ruling that he was ineligible for discretionary relief from deportation.  He argued also that any failure to exhaust administrative remedies after the IJ's adverse ruling in 2000 should be excused because an appeal of the IJ's deportation order would have been futile.

The District Court agreed with Calderon.  It held, *inter alia,* that any attempt by Calderon to exhaust his administrative remedies would have been futile, because "[a]t the time of Mr. Calderon's hearing before the Immigration Judge, the [BIA] took the position that section 212(c) relief had been eliminated in all cases involving aggravated felons, and that there was no right to direct judicial review of BIA decisions." *Calderon,* 2003 WL 1338943, at \*4 (citation omitted).  The District Court also found that "[t]he entry of the deportation order against Mr. Calderon was fundamentally unfair," and that "Mr. Calderon can make a plausible showing that had he been granted a section 212(c) hearing, he would not have been deported." *Id.* at \*7. The District Court concluded that "[b]ecause the deportation order violated Mr. Calderon's due process rights, it cannot be relied upon to establish the prior deportation or

provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)).  Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 1181(b) of this title.  The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5

years."  *See also, e.g., Drax v. Reno,* 338 F.3d 98, 107–08 (2d Cir.2003) (describing availability of 212(c) relief).

5.  Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009, § 304(B) (1996); Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, § 440(d) (1996).

removal needed to sustain a charge of illegal re-entry." *Id.*

## DISCUSSION

█ Under 8 U.S.C. § 1326(a), it is a crime for a deported or removed alien to enter, attempt to enter, or be found in the United States. An alien can defend against this charge by challenging the validity of the deportation order upon which the charge is predicated. *United States v. Gonzalez–Roque,* 301 F.3d 39, 45 (2d Cir. 2002). To do so, however, an alien must "demonstrate[ ] that(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d).

We recently reviewed these three requirements in *United States v. Copeland,* 376 F.3d 61 (2d Cir.2004), which also involved an appeal from Judge Weinstein's dismissal of an indictment for unlawful reentry. We concluded in that case that Richard Copeland had a sound basis on which to challenge his deportation order collaterally where (1) he exhausted his administrative remedies by filing a motion to reopen and appealing the denial of that motion; (2) resort to a habeas proceeding

was not realistically possible; and (3) the IJ's failure to inform Copeland of his right to seek discretionary relief was a procedural error sufficient to render his deportation order fundamentally unfair if that failure prejudiced him. *See id.* at 66–75 (applying 8 U.S.C. § 1326(d)). We then remanded the cause to Judge Weinstein to determine whether Copeland was actually prejudiced by the IJ's procedural error— *i.e.,* "whether there is a reasonable probability that [Copeland] would have obtained relief had he … been informed of, and sought, a Section 212(c) hearing." *Id.* at 73–74.

With respect to the first requirement, exhaustion of administrative remedies, not only did Calderon not exhaust all available administrative remedies, he intentionally waived any administrative review of his deportation order. Calderon did not appeal his deportation order at the time, he did not subsequently move to reopen his case,[6] and he is not subject to the "qualification" to the elimination of the futility exception.[7]

█ Although Calderon chose not to exhaust all available administrative remedies, his choice was not knowing and intelligent. We recently held, in a case similar to Calderon's, that "[a] failure to exhaust administrative remedies bars collateral review of a deportation proceeding under

---

**6.** We have held that the exhaustion requirement of section 1326(d) may be satisfied by a defendant who—despite failing to exhaust administrative remedies previously available to him—subsequently filed a motion to reopen his case and, if that motion were denied, appealed that denial. *See Copeland,* 376 F.3d at 67; *United States v. Perez,* 330 F.3d 97, 101 (2d Cir.2003). Calderon did not file a motion to reopen his case.

**7.** The futility exception to the exhaustion requirement has been eliminated, with one "qualification." *See Copeland,* 376 F.3d at

66–67 ("[T]here is no futility exception, with one qualification … to statutory exhaustion requirements."). This qualification "excuses a litigant from a statutory exhaustion requirement 'where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a complaint.' " *Id.* (quoting *Booth v. Churner,* 532 U.S. 731, 736, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001)). There is no argument on appeal that this qualification applies here, and we see no indication in the record that such an argument would be well-founded.

Section 1326(d)(1) ... only where an alien's waiver of administrative review was knowing and intelligent." *United States v. Sosa*, 387 F.3d 131, 136 (2d Cir.2004). We determined that "the administrative exhaustion requirement is excused because Sosa's waiver of his right to an administrative appeal was not knowing and intelligent," insofar as he "was not informed of his right to apply for Section 212(c) relief." *Id.* at 137. We concluded that "[i]t would offend the principles enunciated in [*United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)] not to excuse the administrative exhaustion requirement under such circumstances. Indeed, the aliens in that case failed to administratively exhaust for the same reasons that Sosa failed to do so, and the Supreme Court held that collateral review was constitutionally required." *Id.*

There are two main differences between this case and the *Sosa* case. First, while the IJ in *Sosa* apparently did not mention the availability of relief under section 212(c) at all, the IJ here specifically stated that Calderon was ineligible for such relief. Second, Sosa was proceeding *pro se* before the IJ, while Calderon was represented by counsel. The first distinction significantly bolsters the argument that the waiver was not knowing and intelligent. Not only was Calderon not informed that he had an opportunity to apply for section 212(c) relief, he was explicitly told by the IJ and his counsel that he was barred from doing so. Just as we excused Sosa from the exhaustion requirement because he was not informed of the possibility of seeking section 212(c) relief, so too do we excuse Calderon because he was advised that he was barred by law from such relief.

■ The second distinction—that Calderon was represented by counsel—does weaken the claim that the waiver was not knowing or intelligent. However, representation alone is not enough for us to ignore the express finding of the District Court, amply supported by the record, that Calderon's waiver of administrative review was not knowing or intelligent. *Calderon*, 2003 WL 1338943, at *7. We review a District Court's factual findings regarding whether a waiver of rights is knowing and voluntary under a clear error standard. *See, e.g., United States v. Banner*, 356 F.3d 478, 480 (2d Cir.2004) (discussing standard of review in *Miranda* waiver context). Accordingly, as the District Court's finding that Calderon's waiver was not knowing and intelligent does not constitute clear error, we conclude that the failure to exhaust administrative remedies therefore does not bar collateral review of the deportation proceeding. Calderon thus satisfies the first requirement of section 1326(d).

■■ We turn to the second requirement of 1326(d), that Calderon demonstrate that he was deprived of the opportunity for judicial review. Although "[t]he availability of habeas review is sometimes deemed to constitute an opportunity for judicial review," *Copeland*, 376 F.3d at 68, "where no *realistic opportunity* for judicial review by way of habeas review existed, an alien's failure to seek such review will not be deemed to preclude a collateral attack on a deportation order under Section 1326(d)(2)." *Id.* at 68–69 (emphasis added); *Sosa*, 387 F.3d at 137. In *Copeland*, we concluded that Copeland had no such realistic opportunity for habeas review "not only because of the lack of time but also because of the legal uncertainties as to the availability of habeas review." 376 F.3d at 69; *see also Sosa*, 387 F.3d at 138 (holding that because of "the speed of this process and the fact that the IJ did not inform Sosa of his eligibility for Section 212(c) relief, [Sosa] had no realistic oppor-

tunity for judicial review by way of habeas, and he was therefore denied the opportunity for judicial review") (internal quotations omitted).

As in *Copeland* and *Sosa,* we hold here that Calderon did not have a realistic opportunity for judicial review by way of a habeas petition. In *Copeland,* there was legal uncertainty as to the availability of such review, and in *Sosa,* the defendant was never informed of the availability of such review; here, Calderon was specifically told that no such review was available to him. In *Copeland* and *Sosa,* the speed of the deportation process rendered judicial review impracticable; the same is true here. Accordingly, we hold that Calderon satisfies the second prong of section 1326(d).

█ Finally, section 1326(d)(3) requires Calderon to demonstrate that the deportation proceeding was fundamentally unfair. We have held that this provision requires a showing of "both a fundamental procedural error and prejudice resulting from that error." *Perez,* 330 F.3d at 104 (quoting *United States v. Fernandez–Antonia,* 278 F.3d 150, 159 (2d Cir.2002)). "[A] failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3)." *Copeland,* 376 F.3d at 71. Such "prejudice is shown where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted Section 212(c) relief." *Id.* at 73. After evaluating a variety of factors, including those set forth in *Lovell v. INS,* 52 F.3d 458, 461 (2d Cir.1995), the District Court in this action concluded that Calderon "can make a plausible showing that had he been granted a section 212(c) hearing, he would not have been deported," and that the proceeding was fundamentally unfair. *Calderon,* 2003 WL 1338943, at *7. This finding is not

clearly erroneous and we see no reason to disturb it. Accordingly, we hold that Calderon satisfies the third requirement of section 1326(d).

## CONCLUSION

In summary, we hold that:

(1) Calderon is excused from the section 1326(d)(1) exhaustion requirement because his waiver of administrative review of the deportation order was not knowing and intelligent;

(2) Calderon satisfies the section 1326(d)(2) requirement that he demonstrate that he was deprived of the opportunity for judicial review because, although he had habeas review available to him, (a) he was mistakenly advised by the IJ to the contrary, and (b) his speedy deportation further limited his ability to seek review; and

(3) the District Court did not clearly err in finding that Calderon satisfies the requirements of section 1326(d)(3) because the deportation proceeding was fundamentally unfair.

Because we hold that Calderon satisfies the requirements of section 1326(d), we affirm the order of the District Court dismissing the section 1326(a) indictment against Calderon.