**UNITED STATES of America,**

v.

**Julio Alfredo GOMEZ–HERNANDEZ, Defendant.**

No. 10–cr–768 (ADS).

United States District Court, E.D. New York.

April 18, 2011.

Loretta E. Lynch, United States Attorney for the Eastern District of New York, by Assistant United States Attorney John J. Durham, Central Islip, NY, for the Government.

Federal Defenders of New York, Inc., by Assistant Federal Defender Tracey E. Gaffey, Central Islip, NY, for the defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The defendant Julio Alfredo Gomez–Hernandez moves to dismiss a single count indictment against him for illegal re-entry, on the basis that the predicate for this offense—Gomez-Hernandez's removal

from the United States in 1997—was unlawful. For the reasons that follow, the defendant's motion is denied.

## I. BACKGROUND

In 1971 or 1972, at the age of 6 or 7, the defendant Julio Alfredo Gomez–Hernandez entered the United States from his native El Salvador with his mother. During the next decade and a half, Gomez–Hernandez graduated from high school in Los Angeles, California and married a United States citizen. It is unclear from the record what Gomez–Hernandez's immigration status was during this period, but on March 15, 1986, Gomez–Hernandez became a lawful permanent resident of the United States. He and his wife have a son, who was born in the United States.

From 1986 until his deportation in 1997, Gomez–Hernandez became increasingly involved in criminal activity. At the time he was deported, Gomez–Hernandez's criminal record reflected:

- a June 25, 1986 guilty plea to a charge of selling marijuana;
- a March 24, 1987 guilty plea to a charge of selling marijuana;
- a November 15, 1988 guilty plea to a charge of transporting or selling a controlled substance (an aggravated felony);

an August 18, 1990 arrest for battery of a police officer (no conviction);

an October 12, 1990 violation of parole (offense not identified);

a May 29, 1991 guilty plea to a charge of receiving stolen property;

a January 19, 1993 guilty plea to a charge of vehicular theft; and

a June 24, 1994 guilty plea to a charge of transportation of cocaine (an aggravated felony).

When Gomez–Hernandez had completed his sentence for transportation of cocaine, the last of these crimes, he was arrested

by the Immigration and Naturalization Service ("INS"), which sought to deport him. Although Gomez–Hernandez had been a legal permanent resident of the United States at the time of his conviction, federal law provides that, pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii), "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." The INS thus charged Gomez–Hernandez as a deportable alien based on his conviction for transportation of cocaine. On September 11, 1997, Gomez–Hernandez appeared before an Immigration Judge ("IJ") and admitted that he was not an American citizen and that he had been convicted of an aggravated felony. Based on this, the Immigration Judge ordered Gomez–Hernandez deported. Gomez–Hernandez did not appeal from this decision or challenge it in a habeas petition. Eleven days later, on September 22, 1997, Gomez–Hernandez was deported to El Salvador.

Sometime prior to July 28, 2010, government officials learned, based on a 2008 arrest of Gomez–Hernandez in Mineola, New York, that he had returned to United States without permission. On September 9, 2010, officers for Immigration and Customs Enforcement ("ICE"—the successor to the INS) arrested the defendant for illegal re-entry. A grand jury then indicted Gomez–Hernandez on October 6, 2010, pursuant to 8 U.S.C. § 1326(a) and (b)(2), which provides for criminal penalties for aliens who were previously deported and then re-enter the United States without permission.

On March 4, 2011, Gomez–Hernandez filed the present motion to dismiss the indictment. Gomez–Hernandez maintains that his deportation on September 22, 1997 was unlawful, because the immigration judge before whom he appeared improperly failed to advise him that he was eligible to apply for permission to remain in the

United States, pursuant to the now-repealed 8 U.S.C. § 1182(c) (1995) (also referred to as Immigration and Nationality Act § 212(c)). Gomez–Hernandez asserts that, without a lawful prior deportation, the illegal re-entry charge against him is invalid. The government agrees that the Immigration Judge did not inform Gomez–Hernandez of the opportunity to pursue relief under Section 212(c), but denies that this invalidated his deportation or undermines the present charge of illegal re-entry.

## II. DISCUSSION

### A. Background on Section 212(c)

The statutory provision at the heart of the defendant's motion to dismiss the indictment is Immigration and Nationality Act § 212(c), previously codified at 8 U.S.C. § 1182(c) (1995). Therefore, before discussing the details of the defendant's challenge, the Court briefly outlines the history of Section 212(c).

From its enactment until 1996, Section 212(c) provided that:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) of this section (other than paragraphs (3) and (9)(C)). . . .

8 U.S.C. § 1182(c) (1995). Although the language of Section 212(c) literally addresses only aliens returning from abroad, courts interpreted it broadly to permit aliens being deported based on the commission of an aggravated felony to seek a discretionary waiver from deportation. *See, generally, I.N.S. v. St. Cyr*, 533 U.S. 289, 295, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Francis v. INS*, 532 F.2d 268, 273

(2d Cir.1976). The Court notes that, while the statutory language requires that an alien seeking Section 212(c) relief have maintained a "lawful unrelinquished domicile", the term "lawful" apparently refers to the alien's immigration status, not to the alien's compliance with other laws. *See, e.g., U.S. v. Cerna*, 603 F.3d 32, 42 (2d Cir.2010) (identifying Second Circuit cases in which aliens with as many as four criminal convictions during their otherwise legal residence in the United States were entitled to consideration as to whether Section 212(c) relief could apply, given other potential positive factors for those individuals); *Lok v. I.N. S.*, 681 F.2d 107, 109 (2d Cir.1982) (interpreting the term "lawful domicile" in Section 212(c) to refer to the legality of an alien's intent to remain in the United States).

On April 24, 1996, the Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which explicitly provided that aliens who had plead guilty to an aggravated felony were *not* eligible for Section 212(c) relief. Later that year, Section 212(c) was repealed in its entirety by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), and replaced with a statute not relevant to the present case. After AEDPA was passed, there was disagreement among members of the Board of Immigration Appeals ("BIA") as to whether Section 212(c) relief remained available to aliens who had plead guilty to an aggravated felony *before* AEDPA became effective. To resolve the issue, United States Attorney General Janet Reno issued a directive on February 21, 1997, indicating that Immigration Judges should apply AEDPA retroactively, and deny Section 212(c) relief to aliens who plead guilty to aggravated felonies prior to AEDPA's enactment on April 24, 1996. *See Authority of the Attorney General to Grant Discretionary Relief from Deportation Under*

*Section 212(c) of the Immigration and Nationality Act as Amended by the Antiterrorism and Effective Death Penalty Act of 1996*, 21 U.S. Op. Off. Legal Counsel 1 (Feb. 21, 1997).

However, federal courts presented with the same issue soon after the Attorney General issued this letter did not universally defer to the Attorney General's directive. In this district, United States District Judge Jack B. Weinstein issued an opinion on July 11, 1997 finding that AEDPA did *not* apply retroactively to Section 212(c), and that an alien who plead guilty to an aggravated felony prior to AEDPA's enactment was still eligible for Section 212(c) relief after AEDPA's effective date. *Mojica v. Reno*, 970 F.Supp. 130, 182 (E.D.N.Y.1997). On September 18, 1998, the Second Circuit affirmed this holding in *Henderson v. I.N.S.*, 157 F.3d 106, 130 (2d Cir.1998), and other courts later reached similar findings. *See, e.g., Goncalves v. Reno*, 144 F.3d 110, 126 (1st Cir.1998). The issue was then definitively resolved when, on June 25, 2001, the United States Supreme Court held in *St. Cyr*, 533 U.S. at 326, 121 S.Ct. 2271, that AEDPA and IIRIRA did not apply retroactively to Section 212(c), and that " § 212(c) relief remains available for aliens ... whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief at the time of their plea under the law then in effect."

In this case, Gomez–Hernandez plead guilty to an aggravated felony in 1994, prior to AEDPA's enactment. However, he was deported in 1997, after AEDPA's enactment and during the period when, pursuant to the Attorney General's directive, Immigration Judges held that Section 212(c) relief was unavailable to aliens whose guilty pleas pre-dated AEDPA. At his deportation hearing, Gomez–Hernandez appeared pro se, and the Immigration Judge before whom Gomez–Hernandez appeared did not inform him of the possibility of Section 212(c) relief, nor did the IJ otherwise address the issue. Gomez–Hernandez maintains that, in light of the fact that Section 212(c) relief should have been available to him under the ruling in *St. Cyr*, the Immigration Judge's failure to inform him of the availability of Section 212(c) relief invalidates his deportation, and nullifies the present illegal re-entry charge.

**B. The Defendant's Collateral Attack on His Underlying Deportation Order**

In response to the Supreme Court's decision in *U.S. v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), 8 U.S.C. § 1326(d) was enacted to provide an avenue by which a defendant may challenge an illegal re-entry charge based on a claim that a previous deportation was unlawful. As a general matter, the statute under which the defendant is charged, illegal re-entry, 8 U.S.C. § 1326(a)(1) and (b), requires as a predicate that the defendant had been previously deported or otherwise excluded from the United States. In turn, Section 1326(d) provides that an alien who challenges a Section 1326(a)(1) or (b) charge on grounds that a prior order of deportation was invalid must demonstrate that:

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the [original deportation] order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the [original deportation] order was fundamentally unfair.

Ultimately, the Court finds that the defendant has satisfied the first two of these

factors. However, because the defendant would not have been granted relief under Section 212(c) on substantive grounds, his underlying order of deportation was not fundamentally unfair. Thus, he has not satisfied the third factor, and his motion to dismiss must be denied.

### 1. As to the First Factor: Exhaustion of Administrative Remedies

■ Section 1326(d)(1) requires that, to succeed on his motion to dismiss the present illegal re-entry charge, the defendant must first show that he has exhausted all administrative remedies available to challenge his 1997 deportation order. There was only one administrative remedy available to Gomez–Hernandez in this respect: appeal of his deportation order to the Board of Immigration Appeals. However, the defendant here did not appeal his deportation order to the BIA, but rather waived that right at his deportation hearing on September 11, 1997. In addition, Gomez–Hernandez has not at any point sought to re-open his immigration proceeding for the purpose of appealing his deportation order to the BIA. Nevertheless, Gomez–Hernandez asserts that this factor should be deemed satisfied, because his waiver of appeal was not "considered and intelligent", in light of the fact that he was not told of the availability of Section 212(c) relief. Based on the binding Second Circuit authority on this issue, the Court agrees.

The Second Circuit addressed a situation very similar to the present case in *U.S. v. Sosa*, 387 F.3d 131, 136–37 (2d Cir.2004). In *Sosa*, the alien defendant similarly had lived in the United States as a legal permanent resident for over a decade when, in 1992, he plead guilty to an aggravated felony charge. In 1997, the INS arrested Sosa and charged him as a deportable alien based on his 1992 conviction. Sosa appeared pro se at his deportation hearing, and consistent with the Attorney General's directive at that time, the Immigration Judge at the hearing did not advise Sosa that Section 212(c) relief was available. During the hearing, Sosa admitted that he was an alien and had been convicted of an aggravated felony, and the Immigration Judge ordered Sosa deported. Sosa waived his right to appeal the order of deportation to the BIA, and was deported one month later. Nine and a half months after his deportation, Sosa reentered the United States without permission, and four years after his re-entry, in July 2002, he was arrested and charged with illegal re-entry, 8 U.S.C. § 1326. Sosa then moved to dismiss the indictment pursuant to Section 1326(d), on grounds that his deportation in 1997 had been unlawful based on the IJ's failure to inform him of the availability of Section 212(c) relief. *Id.* at 133–37.

In addressing the administrative exhaustion requirement of Section 1326(d)(1) in *Sosa*, the Second Circuit first noted that Sosa had not appealed his underlying deportation order to the BIA, and thus had not technically exhausted his administrative remedies. Nevertheless, the court held that Sosa's failure to exhaust his administrative remedies would be excused because his waiver of appeal was not "knowing and intelligent." *Id.* at 136. By way of background, the court quoted from a prior Second Circuit case, *U.S. v. Copeland*, 376 F.3d 61, 71 (2d Cir.2004), for the basic proposition that, "[g]iven that IJs have a duty to develop the administrative record, and that many aliens are uncounselled, our removal system relies on IJs to explain the law accurately to pro se aliens." *Id.* Based on this rule, the *Sosa* court stated that the Immigration Judge before whom Sosa appeared failed to accurately explain the law to Sosa by failing to advise him of the availability of Section 212(c) relief, and that this rendered Sosa's waiver of his administrative appeal invalid.

*Sosa,* 387 F.3d at 137. The *Sosa* court also concluded that this outcome was consistent with, and indeed mandated by, *Mendoza–Lopez,* the Supreme Court decision that prompted the drafting of Section 1326(d).

*Sosa* is directly analogous to the present case. As in *Sosa,* Gomez–Hernandez plead guilty to an aggravated felony before AEDPA took effect, but was deported (1) after AEDPA was enacted but (2) before *St. Cyr* was decided. Also like the defendant in *Sosa,* Gomez–Hernandez appeared pro se before an immigration judge who improperly failed to inform him of the availability of Section 212(c) relief, and again like the defendant in *Sosa,* Gomez–Hernandez waived his right to appeal to the BIA. Thus, the Court concludes that, consistent with *Sosa,* Gomez–Hernandez's waiver of his right to appeal was not knowing and intelligent. Therefore, Gomez–Hernandez's failure to exhaust administrative remedies is excused for purposes of Section 1326(d).

In addition, the Court notes that *Sosa* also contradicts each of the Government's arguments on the issue of exhaustion. First, the Government asserts that Gomez–Hernandez has not exhausted his administrative remedies because he has not moved to re-open his original deportation order to appeal it to the BIA. In support of this argument, the government relies on two Second Circuit cases, *Copeland,* 376 F.3d at 67, and *U.S. v. Perez,* 330 F.3d 97, 100–01 (2d Cir.2003), in which defendants challenging their illegal re-entry charges under Section 1326(d) had exhausted their administrative remedies by moving to re-open their deportation proceedings. However, neither *Copeland* nor *Perez* stated that this was a requirement for satisfying Section 1326(d)(1) after a waiver of administrative appeal rights. Conversely, in *Sosa,* the defendant did not move to re-open his deportation proceedings, and this

was no bar to his satisfaction of the exhaustion requirement. 387 F.3d at 136–37. Another Second Circuit case of the same vintage, *U.S. v. Calderon,* 391 F.3d 370, 374 n. 6 (2d Cir.2004), explicitly reached the same conclusion. The Government's objection in this regard is therefore not valid.

The Government also maintains that the waiver by Gomez–Hernandez of his right to appeal to the BIA *was* knowing and intelligent because the IJ did not provide Gomez–Hernandez with any "misleading information". (Govt.'s Opp. at 9, quoting *U.S. v. Johnson,* 391 F.3d 67, 75 (2d Cir. 2004).) To be sure, the case that the Government relies on for this argument, *U.S. v. Johnson,* states that when an IJ provides misleading information to a deportee, this may render a waiver of appeal unknowing. 391 F.3d at 75. However, the case is silent as to whether an IJ's failure to provide pertinent information could do the same. *Id.* By contrast, *Sosa* expressly held that an IJ's *mere failure to inform* a pro se alien of available Section 212(c) relief renders the alien's waiver of appeal unknowing. 387 F.3d at 134–35. This objection is thus also unavailing.

Finally, the government notes that Gomez–Hernandez had been in the United States for more than two years at the time of his arrest for illegal re-entry, but at no time made any attempt to administratively challenge his deportation order. The Government asserts that this also undermines a finding that he has met the first prong of the Section 1326(d) test. Here, again, *Sosa* provides a direct counterpoint. When he was arrested for illegal re-entry, Sosa had been in the United States for nearly four years without administratively challenging his deportation order. Yet the fact of his presence in the United States during this period did not affect whether Sosa had satisfied the first prong of the

Section 1326(d) test, and the Court similarly finds that the defendant's failure to seek to reopen his own deportation proceedings does not affect the defendant's satisfaction of Section 1326(d)(1). *See Sosa*, 387 F.3d at 135–37.

Therefore, the Court finds that Gomez–Hernandez is deemed to have exhausted his administrative remedies, in satisfaction of the first prong of the Section 1326(d) test.

### 2. As to the Second Factor: Improper Denial of Judicial Review

The second Section 1326(d) factor requires that Gomez–Hernandez show that his 1997 deportation proceedings "improperly deprived [him] of the opportunity for judicial review." Section 1326(d)(2).

■ Under AEDPA and IIRIRA, Gomez–Hernandez had no right to a direct judicial appeal of his deportation order, even had he appealed it to the BIA. *See* IIRIRA § 309(c)(4)(G) (previously codified at 8 U.S.C.A. § 1101 (2000)); *Sosa*, 387 F.3d at 137; *Copeland*, 376 F.3d at 69. Thus, the only avenue available for judicial review of Gomez–Hernandez's deportation order was to file a habeas petition. The operative question for Section 1326(d)(2) is therefore whether Gomez–Hernandez was deprived of the opportunity to seek this type of relief.

The Second Circuit has held on multiple occasions that, where an alien is deported shortly after the entry of a final order of deportation, the practical obstacles to filing a petition for habeas relief prior to deportation precludes it from being a genuine opportunity for judicial review. *Calderon*, 391 F.3d at 376 (holding that "the speed of the deportation process rendered judicial review impracticable" when an alien was deported one month after a final deportation order was entered); *Sosa*, 387 F.3d at 138 (noting that the defendant did not have a "realistic possibility of seeking judicial review through a habeas petition" when he was pro se and deported within one month of the entry of a final deportation order); *Copeland*, 376 F.3d at 68–69 ("where habeas review is potentially available, an opportunity for judicial review will still be deemed to have been denied where the interval between entry of the final deportation order and the physical deportation is too brief to afford a realistic possibility of filing a habeas petition.").

Here, Gomez–Hernandez was deported a mere eleven days after his deportation hearing. This is substantially less time to file a habeas petition than the approximately thirty days available to the defendants in *Calderon* and *Sosa*, and the Second Circuit held that both of those defendants did not have a realistic opportunity to seek habeas relief. *Id.* The Court thus concludes that, like the defendants in *Calderon* and *Sosa*, Gomez–Hernandez did not have an adequate opportunity for judicial review of his deportation order, and has satisfied the second prong of the Section 1326(d) test.

The Court notes that the Government challenges this conclusion on the grounds that the defendant has failed to show—as the Government maintains is required by Section 1326(d)(2)—a "procedural error in the deportation proceeding itself" that deprived the defendant of judicial review. (Govt.'s Opp. at 13.) However, contrary to the Government's contention, it is the Court's view that the Second Circuit has interpreted Section 1326(d)(2) in light of its judicial origin, *Mendoza–Lopez*, to require only that a defendant have been denied judicial review, and not that there be an identifiable procedural error in the deportation proceedings that caused this result. *See, e.g., Copeland*, 376 F.3d at 68–69 ("We read these precedents to … establish a principle that where no realistic opportunity for judicial review by way of

habeas review existed, an alien's failure to seek such review will not be deemed to preclude a collateral attack on a deportation order under Section 1326(d)(2).") Moreover, to the extent that the defendant is required to make a showing of some procedural error in the deportation proceeding, the Court finds, as discussed below, that the IJ's failure to inform Gomez–Hernandez of the availability of Section 212(c) relief satisfies this requirement.

### 3. As to the Third Factor: Fundamental Unfairness

■ To satisfy the third and final Section 1326(d) factor, the defendant must show that the entry of his 1997 final deportation order was fundamentally unfair. This factor requires two showings: "[1] a fundamental procedural error, and [2] prejudice resulting from that error." *Perez*, 330 F.3d at 104 (quoting *United States v. Fernandez–Antonia*, 278 F.3d 150, 159 (2d Cir.2002)). Addressing each of these in turn, the Court finds that Gomez–Hernandez did suffer a fundamental procedural error, but that he was not prejudiced by this error.

#### a. Fundamental Procedural Error

■ In *Copeland*, 376 F.3d at 71, the Second Circuit held that "a failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3)." Shortly after issuing *Copeland*, the Second Circuit repeated this holding in *Sosa*, 387 F.3d at 138, stating that "[t]he IJ in this case failed to inform Sosa of his right to seek Section 212(c) relief and therefore committed error of a fundamental nature." (Internal quotation omitted). There is no dispute here that the IJ before whom Gomez–Hernandez appeared failed to inform him of the availability of Section 212(c) relief. Pursuant to *Copeland* and *Sosa*, the Court thus

finds that this constituted a fundamental procedural error.

Nevertheless, the Government maintains that the IJ's failure to inform Gomez–Hernandez of the availability of Section 212(c) relief was *not* fundamental error, because at the time of Gomez–Hernandez's deportation, the Supreme Court had not yet ruled that Section 212(c) relief was available to aliens in Gomez–Hernandez's position. In other words, the Government argues that, because the IJ was acting pursuant to the Attorney General's directive when he failed to discuss Section 212(c) relief before deporting Gomez–Hernandez in 1997, the proceeding was fundamentally fair.

However, this conclusion directly contradicted by the holdings of *Sosa* and *Copeland*. In addition, it also mischaracterizes of the nature of the Immigration Judge's error. In making its argument, the Government relies on a case from the Ninth Circuit, *Alvarenga–Villalobos v. Ashcroft*, 271 F.3d 1169, 1172–73 (9th Cir.2001). That case held that the rules of finality preclude courts from revisiting final judgments denying 212(c) relief, when those judgments were based on the mistaken view that AEDPA rendered this relief unavailable. In short, the Ninth Circuit essentially held that courts should not reopen final judgments where Section 212(c) relief was denied to aliens under the then-prevailing—but ultimately incorrect—understanding that AEDPA applied retroactively.

Whatever the persuasive effect of the Ninth Circuit's holding on this point of law, this case presents a different issue. The fundamental error in Gomez–Hernandez's proceeding was not that the IJ improperly applied Section 212(c). Rather, it was that the IJ entirely failed to advise Gomez–Hernandez of the potential availability of Section 212(c) relief.

Before Gomez–Hernandez's deportation hearing, at least one federal court had explicitly repudiated the Attorney General's directive and found that Section 212(c) relief remained available for individuals in Gomez–Hernandez's situation. *See Mojica*, 970 F.Supp. at 182 (decided two months before Gomez–Hernandez's deportation hearing, and holding that Section 212(c) relief was available to aliens who pleaded guilty to aggravated felonies before AEDPA was enacted); *see also Henderson*, 157 F.3d at 130 (affirming *Mojica*); *Goncalves*, 144 F.3d at 126 (holding the same as *Mojica* and *Henderson*). The IJ before whom Gomez–Hernandez appeared made a fundamental procedural error not by denying a Section 212(c) request, but by effectively denying Gomez–Hernandez—who as a pro se was unlikely to be aware of the availability of the relief—the opportunity to make such a request. To be sure, if Gomez–Hernandez had elected to seek Section 212(c) relief from the Immigration Judge, the outcome was presumably a foregone conclusion, since the Attorney General had directed Immigration Judges to deny this relief. However, the outcome on habeas review, as demonstrated by *Mojica* and later *St. Cyr* itself, was not so certain. Thus, given the IJ's heightened responsibility to fully inform pro se aliens of the applicable law, *see Copeland*, 376 F.3d at 71, the IJ's failure to make Gomez–Hernandez aware of even the possibility of this relief was a fundamental error.

### b. Prejudice Resulting From the Error

The final hurdle that Gomez–Hernandez must overcome in challenging the indictment is to show that he was prejudiced by the IJ's failure to inform him of the availability of Section 212(c) relief. The Court finds that Gomez–Hernandez has failed to make this showing.

The standard for prejudice in this context has been articulated in numerous forms by federal courts, but the most direct statement of the rule in this Circuit appears in *Copeland*, 376 F.3d at 73. There, drawing on the standard for ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Second Circuit stated that "prejudice is shown where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted Section 212(c) relief." The Court finds that, given his personal and criminal history, Gomez–Hernandez cannot meet this standard, nor can he meet the arguably more lenient articulations of the prejudice standard found elsewhere. *See, e.g., U.S. v. Jimenez–Marmolejo*, 104 F.3d 1083, 1086 (9th Cir.1996) (requiring an alien to show only "plausible grounds for relief" under Section 212(c) to demonstrate that he was prejudiced by an invalid waiver of his appeal rights).

In considering whether to grant relief under Section 212(c), Immigration Judges were required to "balance the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of relief appeared to be in the best interests of this country." *Cerna*, 603 F.3d at 41 (internal quotations and alterations omitted). In particular, the BIA identified four potentially adverse factors to consider and nine potentially favorable factors to consider:

> Adverse factors include: (1) the nature and circumstances of the exclusion ground at issue; (2) other immigration law violations; (3) the alien's criminal record; and (4) evidence indicative of an alien's undesirability as a permanent resident.

Favorable factors include: (1) family ties to the United States; (2) many years of residency in the United States; (3) hardship to the alien and his family upon deportation; (4) United States military service; (5) employment history; (6) community service; (7) property or business ties; (8) evidence attesting to good character; and, in the case of a convicted criminal, (9) proof of genuine rehabilitation.

*Id.; accord Matter of Marin,* 16 I. & N. Dec. 581, 584–85 (BIA 1978). Prior to 1996, it was not overly onerous to succeed on a request for this relief, and more than 50% of alien applications for Section 212(c) relief were granted. *St. Cyr,* 533 U.S. at 296, n. 5, 121 S.Ct. 2271. However, the BIA also noted that a higher standard applied to individuals convicted of serious drug crimes:

As the negative factors grow more serious, it becomes incumbent upon the alien to introduce additional offsetting favorable evidence, which in some cases may have to involve unusual or outstanding equities. Such a heightened showing is required when an alien has been convicted of a serious drug offense, particularly one relating to the trafficking or sale of drugs.

*Matter of Roberts,* 20 I. & N. Dec. 294, 299 (BIA May 1, 1991) (internal citations omitted).

Considering these factors in lieu of the Immigration Judge who would have analyzed them at the time of Gomez–Hernandez's 1997 deportation hearing, the Court finds that the adverse factors weigh heavily against Gomez–Hernandez. The favorable factors are few.

At the time of his deportation, Gomez–Hernandez had six criminal convictions on his record. Two of these were for property crimes, and two were for aggravated drug felonies related to the transportation or sale of drugs. Gomez–Hernandez served several years in prison for these crimes; violated his parole on more than one occasion; and had also been arrested for battery of a police officer. In addition, while none of Gomez–Hernandez's convictions directly suggest involvement in gang activity, he has extensive tattooing on his shoulders, chest, back, arms, and legs, all making reference to the 18th Street Gang—a notorious and violent street gang.

By contrast, the defendant can identify only three factors that weigh in his favor, and two of these factors are closely related to each other. With respect to favorable factors (1) and (3), the defendant has both a wife and a son in the United States, and although there is no evidence that the defendant was providing substantial support for them, the defendant's deportation is assumed to be a hardship on these two family members. As for favorable factor (2), Gomez–Hernandez lived in the United States from the time that he was six or seven years old until he was deported approximately twenty-five years later—a substantial length of residence in the United States. However, as for the remaining factors, the defendant never served in the military; there is no evidence that he had a positive history of work or community service; he does not appear to have had property or business ties to the United States; there is no evidence attesting to his good character; and there was no indication at the time of his deportation of genuine rehabilitation.

To be sure, the Court is sensitive to the fact that two of the defendant's convictions were for the sale of small amounts of marijuana, and that the defendant appears to have battled a long-term drug addiction problem, for which he did not receive treatment while incarcerated. Nevertheless, to the extent that this mitigates the seriousness of the defendant's criminal record, it is insufficient to show that he

would have received Section 212(c) relief. Rather, the Court is firmly convinced that, had he been given the opportunity to seek this waiver on substantive grounds, Gomez–Hernandez would have been denied Section 212(c) relief.

The Court's conclusion is consistent with the cases addressing this issue cited by the Government. *See Matter of Roberts,* 20 I. & N. Dec. at 303 (finding that an alien who was deportable for the sale of cocaine was not eligible for Section 212(c) relief, in spite of the alien's otherwise clean criminal record and his family connections to the United States); *Matter of Edwards,* 20 I. & N. Dec. 191, 197 (BIA May 2, 1990) (denying Section 212(c) relief to an alien with an extensive criminal record, in spite of the fact that he had lived in the United States for 22 years and had a wife and children in the United States); *Matter of Buscemi,* 19 I. & N. Dec. 628, 636 (BIA Apr. 13, 1988) (declining to grant Section 212(c) relief to alien with one drug conviction and one attempted robbery conviction, even when alien had a long period of residence in the United States, strong family ties to the United States, and a history of gainful employment).

By contrast, the Court is not persuaded by the cases that the defendant cites for the proposition that he would have been granted Section 212(c) relief. *See U.S. v. Aguirre–Tello,* 181 F.Supp.2d 1298, 1305–06 (D.N.M.2002) (holding that an alien with only *one* conviction would likely have been granted Section 212(c) relief); *U.S. v. Diaz–Nin,* 221 F.Supp.2d 584, 591 (D.Virgin Islands 2002) (finding that an alien with only *one* conviction had a strong likelihood of being granted Section 212(c) relief based on the fact that she had three children in the United States and had "close ties to the community"); *Copeland,* 376 F.3d at 74 (remanding case to district court for determination as to whether alien with several convictions could be eligible for Section 212(c) relief, given unidentified potential favorable factors not addressed by the district court).

The Court therefore concludes that the IJ's failure to advise Gomez–Hernandez of the availability of Section 212(c) relief was not fundamentally unfair. In the Court's view, clearly based on the record, Gomez–Hernandez would not have been granted this relief on the merits. As Gomez–Hernandez had thus failed to satisfy the prejudice requirement of the third prong of the Section 1326(d) test for collaterally challenging an underlying deportation order, Gomez–Hernandez's challenge to his 1997 deportation is rejected, and his motion to dismiss the indictment is denied.

## III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the defendant Gomez–Hernandez's motion to dismiss the indictment is denied.

**SO ORDERED.**